CAPITAL MARKETS ALLIANCE

November 2, 2026

Ms. Vanessa Countryman
Secretary
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

Christopher J. Kirkpatrick, Secretary
Commodity Futures Trading Commission
1155 21st Street NW
Washington, DC 20581

**Re: File No. SR-KALSHIEX-2026-02; File No. SR-COIN-2026-002; File No. SR-BTNL-2026-001; File No. SR-OGM-2026-001; and Joint Request for Comment on Further Definition of "Swap" and "Security-Based Swap" and on Alternative Compliance (File No. S7-2026-21)**

Dear Ms. Countryman & Mr. Kirkpatrick:

The Capital Markets Alliance ("CMA")[1] submits this letter in response to various filings made by CFTC-registered designated contract markets ("DCMs") and the joint SEC and CFTC request for comment on the definitions of "swap" and "security-based swap." These DCM filings are circumventing the statutory regime established by Congress by incorrectly classifying single stock perpetual derivatives as "security futures" rather than "security-based swaps." The Commissions must intervene to ensure that these products are correctly classified under the statutory framework and that key questions, such as those documented in the joint request for comment, are resolved prior to the commencement of trading by retail investors.

## I. Single Stock Perpetual Derivatives

The recent filings by four DCMs raise serious concerns. First, permitting these products to trade as security futures would represent an unexplained reversal of the CFTC's longstanding position. For years, the CFTC treated perpetual derivatives as swaps, including in enforcement actions against BitMEX, Binance, and other trading

[1] The Capital Markets Alliance Association is a New York-based trade association that brings together some of the most significant institutions in American finance – leading exchanges, market makers, and broker-dealers – to advance policies that strengthen our capital markets. More information can be found at https://www.capitalmarketsalliance.org/.

platforms.[2] The SEC has likewise treated comparable contracts for difference referencing individual stocks as security-based swaps. The DCM filings offer no reasoned explanation for abandoning these longstanding positions.

Second, it would be deeply problematic to allow single stock perpetuals to trade on DCMs before key questions, such as those documented in the joint request for comment, are resolved. In its May 2026 policy statement, the CFTC acknowledged that perpetual derivatives raise novel and complex regulatory issues and expressly recognized that single stock perpetuals would benefit from review by both Commissions.[3] The Commissions subsequently issued this joint request for comment, specifically asking about how to classify single stock perpetual derivatives and what consequences their introduction could have for the underlying equity markets and retail investors more generally.

The statutory classification of these instruments as security-based swaps is clear. The Commodity Exchange Act defines a "swap" to include an agreement that exchanges payments based on the value of an asset, transfers the financial risk associated with changes in that value, and conveys no ownership interest in the underlying asset.[4] Perpetual derivatives satisfy these requirements. They provide continuous exposure to changes in an underlying asset's price through cash payments and periodic funding transfers, without conveying ownership of the asset. Where the underlying asset is an individual stock, the instrument falls squarely within the definition of a "security-based swap" under the Securities Exchange Act of 1934.[5]

Labeling these instruments as "security futures" does not make them so. Congress defined a security future as a "contract of sale for future delivery" of a security or narrow-based securities index.[6] Perpetual derivatives, by design, have no expiration date or scheduled delivery obligation. Unlike futures, perpetual derivatives provide indefinite exposure through recurring payments. A contract designed never to expire cannot be transformed into a contract for future delivery merely because a trading venue finds that classification more convenient.

Permitting single stock perpetual derivatives to circumvent regulatory requirements would directly undermine the investor protections Congress established and threaten the integrity of U.S. equity markets. Highly leveraged positions, automatic liquidations, and trading activity outside the SEC's integrated surveillance framework

---

[2] See, e.g., Complaint ¶¶ 60–64, *CFTC v. Zhao*, No. 23-cv-01887 (N.D. Ill. Mar. 27, 2023); Consent Order for Permanent Injunction, *CFTC v. Zhao* (Dec. 14, 2023).

[3] Policy Statement Concerning the Listing of Perpetual Contracts, 91 Fed. Reg. 33,160, 33,161 (June 3, 2026).

[4] 7 U.S.C. § 1a(47)(A)(iii).

[5] 15 U.S.C. § 78c(a)(68)(A).

[6] 7 U.S.C. § 1a(44); 15 U.S.C. § 78c(a)(55)(A).

create serious risks of market manipulation and price volatility that will spill over into the underlying securities markets.

## II. Conclusion

The Commissions must enforce the jurisdictional boundaries established by Congress. Perpetual derivatives referencing individual securities are security-based swaps, not security futures. The CFTC must reject pending filings that misclassify these instruments and the SEC must likewise exercise its statutory authority over products that should be subject to its exclusive jurisdiction.

Respectfully,

Capital Markets Alliance