UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITAL MARKETS ALLIANCE ASSOCIATION,<br>*Plaintiff*,<br>v.<br>COMMODITY FUTURES TRADING COMMISSION, *and*<br>MICHAEL S. SELIG, *in his official capacity as Chairman of the Commodity Futures Trading Commission,*<br>*Defendants*. | No. 26-cv-9608 (LGS) |

**BRIEF OF AMICUS CURIAE SECURITIES AND EXCHANGE COMMISSION IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

J. RUSSELL MCGRANAHAN
*General Counsel*

JEFFREY R. JOHNSON
*Solicitor*

DAVID D. LISITZA
*Senior Appellate Counsel*

EZEKIEL L. HILL
*Senior Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202-551-7724 (Hill)
hillez@sec.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

STATEMENT OF INTEREST ........ 1

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. The SEC and CFTC coordinate and collaborate on shared regulatory interests like equity perpetuals ........ 3

II. The equity perpetual rule changes are currently subject to SEC review ........ 5

III. The SEC has enforcement and regulatory authority over security futures ........ 6

A. The SEC enforces the federal securities laws' prohibitions on fraud, manipulation, and insider trading in security futures ........ 7

B. Intermediaries that handle security futures transactions are subject to SEC registration and oversight ........ 8

C. The SEC has continuing authority over security futures and the rules governing their trading ........ 9

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Case**

*Lorenzo v. SEC*,
587 U.S. 71 (2019) ........................................ 8

**Statutes**

Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*

Section 1a, 7 U.S.C. § 1a ........................................ 2, 4

Section 2(a)(1), 7 U.S.C. § 2(a)(1) ........................................ 7, 9

Section 4d(a)(2), 7 U.S.C. § 6d(a)(2) ........................................ 9

Securities Act of 1933, 15 U.S.C. § 77a *et seq.*

Section 2(a)(1), 15 U.S.C. § 77b(a)(1) ........................................ 2

Section 17, 15 U.S.C. § 77q ........................................ 8

Section 20, 15 U.S.C. § 77t ........................................ 8

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*.

Section 3(a), 15 U.S.C. § 78c(a) ........................................ 2, 4

Section 6, 15 U.S.C. § 78f ........................................ 6, 7, 9

Section 7(c)(2)(B)(iii), 15 U.S.C. § 78g(c)(2)(B)(iii) ........................................ 10

Section 9, 15 U.S.C. § 78i ........................................ 7, 8

Section 10(b), 15 U.S.C. § 78j(b) ........................................ 7, 8

Section 15, 15 U.S.C. § 78o ........................................ 8

Section 15A, 15 U.S.C. § 78o-3 ........................................ 8, 9

Section 16(f), 15 U.S.C. § 78p(f) ........................................ 8

Section 17A(b)(7), 15 U.S.C. § 78q-1(b)(7) ........................................ 10

Section 19(b), 15 U.S.C. § 78s(b) ........................................ 3, 6, 9

Section 21, 15 U.S.C. § 78u ........................................ 8

Section 21A, 15 U.S.C. § 78u-1(a) ........................................ 8

15 U.S.C. § 78aaa *et seq.* ........................................ 9

15 U.S.C. § 8302(a)(8) ........................................ 4

**Rules**

Rules under the Commodity Exchange Act, 17 C.F.R. § 1 *et seq*.

17 C.F.R. § 40.3(d)(1) .......... 3

17 C.F.R. § 40.5(d)(1) .......... 3

17 C.F.R. § 41.23(b) .......... 3

Rules under the Securities Exchange Act of 1934, 17 C.F.R. § 240.0-1 *et seq*.

17 C.F.R. § 240.6h-1 .......... 9

17 C.F.R. § 240.10b-5 .......... 7

17 C.F.R. § 240.15b11-1 .......... 8

17 C.F.R. § 240.15c3-3 .......... 9

17 C.F.R. § 240.19b-7 .......... 3, 6

17 C.F.R. §§ 242.400–242.406 .......... 10

**Commission Releases**

*Joint Request for Comment on Further Definition of "Swap" and "Security-Based Swap" and on Alternative Compliance*, 91 Fed. Reg. 37873 (June 24, 2026) .......... 5

*Notice of a Filing of a Proposed Rule Change Relating to Security Futures Product Listing Standards, Customer Margin and Related Rules*, 91 Fed. Reg. 60438 (Sept. 23, 2026) .......... 3

*Notice of Filing and Immediate Effectiveness of a Proposed Rule Change Relating to the Adoption of Coinbase Derivatives, LLC's Rules Governing Cash Settled Futures on Individual Equity Securities and Exchange-Traded Fund Shares, Including Perpetual Single-Stock Futures*, 91 Fed. Reg. 60448 (Sept. 23, 2026) .......... 3

*Notice of Filing and Immediate Effectiveness of a Proposed Rule Change Relating to Listing Standards for Security Futures Products*, 91 Fed. Reg. 60467 (Sept. 23, 2026) .......... 3

*Order Under Section 36 of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 6h-1(d) Thereunder Granting Conditional Exemptive Relief to the Chicago Mercantile Exchange Inc. From the Opening Price Settlement Requirements of Rule 6h-1(b) Under the Exchange Act for Certain Cash-Settled Security Futures*, 91 Fed. Reg. 43410 (July 15, 2026) .......... 7

**Other Authorities**

SEC and CFTC, *A Joint Report of the SEC and the CFTC on Harmonization of Regulation* (Oct. 16, 2009)........................................................................................ 3-4

SEC and CFTC, *Memorandum of Understanding Between the U.S. Securities and Exchange Commission and the U.S. Commodity Futures Trading Commission Regarding Harmonization in Areas of Common Regulatory Interest* (Mar. 11, 2026).........4, 5

SEC Chairman Paul S. Atkins, *Harmonization: A New Era of Collaboration between the SEC and CFTC* (Sept. 29, 2025).............................................................................4

SEC Commissioner Mark T. Uyeda, *Regulatory Disruption: Remarks at the SEC-CFTC Roundtable on Regulatory Harmonization Efforts* (Sept. 29, 2025) ........................................4

## STATEMENT OF INTEREST

The Securities and Exchange Commission administers and enforces the federal securities laws. The SEC submits this brief as amicus curiae because it has a substantial interest in the regulatory jurisdiction questions presented by this case, which implicate the SEC's coordination and collaboration with the Commodity Futures Trading Commission and the SEC's regulatory and enforcement authority over security futures, which are securities.

## INTRODUCTION

In moving for a temporary restraining order and preliminary injunction, Capital Markets Alliance Association argues that the CFTC's approval of rule changes permitting the listing of cash-settled perpetual contracts referencing individual equity securities has "upended the regulatory framework governing U.S. stock trading" by enabling "an end-run around the regulatory regime Congress designed to protect investors and markets" that will cause "a parallel, synthetic market in U.S. stocks to grow outside the SEC's core regulatory perimeter." Dkt. 4-1 at 1. That depiction—of a CFTC gone rogue, and an SEC gone missing—is mistaken.

First, as a general matter, the SEC and CFTC coordinate and collaborate on issues of common regulatory interest, including equity perpetuals. As financial markets have converged, the agencies increasingly oversee similar—and sometimes identical—venues, products, and market participants. Still evolving in implementation, their renewed commitment to cooperation promotes effective regulation by supporting lawful innovation while preserving market integrity and investor and customer protection.

Second, the SEC is actively fulfilling its statutory obligations with respect to the equity perpetual rule changes. The CFTC's November 3, 2026, approval started a 60-day period during which the SEC, after consulting with the CFTC, may abrogate the rule changes and require them

to proceed under the SEC's ordinary notice-and-approval process. Because that review period has not yet run, the SEC takes no position here on whether the rule changes should be abrogated.

Third, defining a product as a security future does not create an end-run around the regulatory regime as the Association claims. Security futures are subject not only to the CFTC's enforcement and regulatory authority but also—as securities—to the SEC's enforcement and regulatory authority. That includes the federal securities laws' prohibitions on fraud, manipulation, and insider trading, as well as oversight of market intermediaries and trading rules.

**BACKGROUND**

On September 18, 2026, three entities—each registered with the CFTC as a designated contract market and notice registered with the SEC as a national securities exchange—submitted proposed rule changes to the CFTC, seeking approval to list equity perpetuals. *See* Dkt. 1-2. As described in those filings, the equity perpetuals provide continuing cash-settled exposure to changes in the price of an individual stock and use recurring funding payments designed to keep the contract price aligned with the stock price. The filings characterized each equity perpetual as a "security futures product," a term that includes a "security future," which is "a contract of sale for future delivery of a single security or of a narrow-based security index." 15 U.S.C. § 78c(a)(55)(A); 7 U.S.C. § 1a(44); *see* 15 U.S.C. § 78c(a)(56); 7 U.S.C. § 1a(45). A security future is both a "security" under the federal securities laws and a futures contract under the Commodity Exchange Act. 15 U.S.C. §§ 77b(a)(1), 78c(a)(10); 7 U.S.C. § 1a(44).

In addition to their CFTC filings, the designated contract markets also filed corresponding proposed rule changes with the SEC. 15 U.S.C. § 78s(b)(7); 17 C.F.R. § 240.19b-7. The SEC published those filings for public comment.[1]

The CFTC's review period for the equity perpetual rule changes expired on November 2, 2026, and the changes were deemed approved on November 3, 2026. *See* 17 C.F.R. §§ 40.3(d)(1), 40.5(d)(1), 41.23(b). In his comments on the approvals, CFTC Chairman Michael S. Selig characterized the equity perpetuals as security futures products. CFTC Chairman Michael S. Selig, *Statement on Equity Perpetual Futures* (Nov. 3, 2026), Dkt. 1-1. The SEC's 60-day review window, triggered by the CFTC's approval, runs through December 31, 2026. *See infra* 5-6.

On November 3, 2026, the Association filed this action, alleging that the CFTC's approval of the equity perpetual rule changes violated the Administrative Procedure Act. That same day, this Court denied the Association's motion for a temporary restraining order. Dkt. 11. The SEC submits this amicus brief in support of the CFTC's and CFTC Chairman Selig's opposition to the Association's motion for a temporary restraining order and preliminary injunction.

## ARGUMENT

### I. The SEC and CFTC coordinate and collaborate on shared regulatory interests like equity perpetuals.

"When Congress originally established the CFTC in 1974, its jurisdiction and the SEC's jurisdiction could be delineated with relative clarity to refer to distinct markets." SEC and CFTC, *A Joint Report of the SEC and the CFTC on Harmonization of Regulation* 15 (Oct. 16,

---

[1] 91 Fed. Reg. 60438 (Sept. 23, 2026) (Bitnomial Exchange, LLC); 91 Fed. Reg. 60448 (Sept. 23, 2026) (Coinbase Derivatives, LLC); 91 Fed. Reg. 60467 (Sept. 23, 2026) (KalshiEX LLC).

2009), https://www.sec.gov/news/press/2009/cftcjointreport101609.pdf. But changes in regulatory structure and financial markets have created significant areas of common regulatory interest and enhanced the importance of interagency collaboration and cooperation.

Start with regulatory structure. Congress has assigned the agencies overlapping authority over certain products. A "mixed swap," for example, meets the statutory definitions of both a "swap," regulated by the CFTC, and a "security-based swap," regulated by the SEC, and thus is subject to joint regulation. *See* 15 U.S.C. § 8302(a)(8); 7 U.S.C. § 1a(47)(D); 15 U.S.C. § 78c(a)(68)(D). And security futures, which are both securities under the federal securities laws and futures contracts under the Commodity Exchange Act, are subject to oversight by both agencies. *See supra* at 2; *infra* at 6-10.

In addition to regulatory structure, the need for collaboration and coordination has grown because "[f]inancial markets are evolving rapidly and becoming more interconnected through global technologies" as "[n]ew trading models, digital infrastructure, and onchain, automated systems increasingly blur traditional jurisdictional lines" and "[m]arket participants operate across platforms and asset classes." SEC and CFTC, *Memorandum of Understanding Between the U.S. Securities and Exchange Commission and the U.S. Commodity Futures Trading Commission Regarding Harmonization in Areas of Common Regulatory Interest* 1 (Mar. 11, 2026), https://www.sec.gov/files/mou-sec-cftc-2026.pdf. In other words, "[i]n [this] increasingly convergent financial ecosystem, the SEC and CFTC . . . share significant areas of common

regulatory interest, including oversight of trading venues . . . and products that span securities and derivatives frameworks." *Id.*[2]

Recognizing that "[e]ffective regulation require[d] a renewed commitment to coordination and collaboration," the SEC and CFTC entered into a March 2026 memorandum of understanding to support lawful innovation while preserving market integrity and investor and customer protection. *Id.* The memorandum establishes mechanisms for collaboration on, among other things, dually registered exchanges, data sharing, risk monitoring, surveillance, examinations, and enforcement. This coordination and collaboration is an important feature of the governing regulatory framework for equity perpetuals. *See, e.g.*, *Joint Request for Comment on Further Definition of "Swap" and "Security-Based Swap" and on Alternative Compliance*, 91 Fed. Reg. 37873, 37875 (June 24, 2026) ("The Commissions jointly request public comment on potential ways to draw clearer regulatory lines for agency oversight of innovative products that may implicate the regulatory interests of both Commissions.").

## II. The equity perpetual rule changes are currently subject to SEC review.

Congress gave the SEC its own statutory role in reviewing the rules under which security futures are listed, and that review is pending here. The entities that seek to list the equity perpetuals are each registered with the CFTC as a designated contract market and notice

[2] *See also* SEC Chairman Paul S. Atkins, *Harmonization: A New Era of Collaboration between the SEC and CFTC* (Sept. 29, 2025), https://www.sec.gov/newsroom/speeches-statements/atkins-092925-harmonization-new-era-collaboration-between-sec-cftc ("What were once separate streams have converged into a rushing torrent of innovation that demands a new approach. Today's torrent of financial innovation demands a unified response."); SEC Commissioner Mark T. Uyeda, *Regulatory Disruption: Remarks at the SEC-CFTC Roundtable on Regulatory Harmonization Efforts* (Sept. 29, 2025), https://www.sec.gov/newsroom/speeches-statements/uyeda-092925-regulatory-disruption-remarks-sec-cftc-roundtable-regulatory-harmonization-efforts ("The SEC and CFTC share responsibility for markets that are increasingly interwoven. The agencies need to look past technical definitions and focus on the functional aspects of novel products themselves.").

registered with the SEC as a national securities exchange for the limited purpose of trading security futures. 15 U.S.C. § 78f(g)(1). Under that framework, a designated contract market that lists a security futures product must also file the associated change to its exchange rules with the SEC, but the rule change takes effect upon the conclusion of the CFTC's review, without SEC approval. 15 U.S.C. §§ 78f(g)(4)(B), 78s(b)(7).

As noted above, each of the designated contract markets here followed that process: it filed its proposed rule change with the SEC on September 18, 2026, and the SEC published the filings for public comment. *See supra* at 3 & n.1. The rule changes took effect on November 3, 2026, when the applications were deemed approved by the CFTC. But within 60 days, the SEC, after consulting with the CFTC, may abrogate a rule change and require that it be refiled and reviewed under the SEC's ordinary notice-and-approval procedures "if it appears to the [SEC] that [the] rule change unduly burdens competition or efficiency, conflicts with the securities laws, or is inconsistent with the public interest and the protection of investors." 15 U.S.C. §§ 78s(b)(1), (b)(7)(C); 17 C.F.R. § 240.19b-7.

That 60-day period runs through December 31, 2026. Because that review period has not yet closed, the SEC respectfully takes no position in this brief on whether the rule changes should be abrogated.[3] The pending review nevertheless confirms that characterizing a product as a security future does not place it beyond the SEC's authority.

## III. The SEC has enforcement and regulatory authority over security futures.

The Association appears to suggest that because categorizing equity perpetuals as security futures places them "outside the SEC's exclusive jurisdiction," it largely removes them

---

[3] The SEC agrees with the CFTC and CFTC Chairman Selig that the Association has not sufficiently demonstrated standing. *See* Dkt. 31. That suffices to defeat the Association's motion.

from SEC jurisdiction altogether. *See* Dkt. 4-1 at 33-34. That is incorrect. As described below, the SEC has substantial enforcement and regulatory authority over security futures. That includes enforcing the central fraud, manipulation, and insider-trading prohibitions of the federal securities laws, overseeing the intermediaries that handle security futures transactions, and setting the rules governing their ongoing trading.

**A. The SEC enforces the federal securities laws' prohibitions on fraud, manipulation, and insider trading in security futures.**

In the Commodity Futures Modernization Act of 2000, Congress created security futures as a distinct category of instrument under the joint jurisdiction of the CFTC and the SEC. *See* 7 U.S.C. § 2(a)(1)(D); 15 U.S.C. §§ 78f(g), (h); *see Order Under Section 36 of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 6h-1(d) Thereunder Granting Conditional Exemptive Relief to the Chicago Mercantile Exchange Inc. From the Opening Price Settlement Requirements of Rule 6h-1(b) Under the Exchange Act for Certain Cash-Settled Security Futures,* 91 Fed. Reg. 43410, 43411 (July 15, 2026) ("[T]he regulatory framework established by the [Commodity Futures Modernization Act] for the markets and intermediaries trading security futures products provides the SEC and the CFTC with joint jurisdiction."). Congress specified that "[n]otwithstanding the Commodity Exchange Act, the [SEC] shall have the authority to regulate the trading of any security futures product to the extent provided in the securities laws." 15 U.S.C. § 78i(h)(2).

That authority gives the SEC ample power to regulate security futures. Because security futures are securities, the federal securities laws' antifraud, anti-manipulation, and insider-trading provisions apply directly. Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 prohibit fraud in connection with the purchase or sale of any security, including a security future. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Section 17(a) of the Securities Act

of 1933 reaches fraud in the offer or sale of security futures, including those exempt from registration. 15 U.S.C. §§ 77q(a), (c). Those prohibitions reach insider trading in a security future just as if the person had traded the stock itself. 15 U.S.C. §§ 78j(b), 78u-1(a). Congress also expressly subjected corporate insiders' transactions in security futures to reporting and short-swing profit requirements. 15 U.S.C. § 78p(f). And the Exchange Act's prohibitions on market manipulation also apply. 15 U.S.C. § 78i.

The SEC may investigate violations of these provisions and enforce them through its full range of remedies, including injunctions, disgorgement, and civil penalties. *See* 15 U.S.C. §§ 77t, 78u, 78u-1. "Congress intended to root out all manner of fraud in the securities industry" and "gave to the [SEC] the tools to accomplish that job." *Lorenzo v. SEC*, 587 U.S. 71, 85 (2019). It stands ready to use those tools on security futures just as it does for any other security.

**B. Intermediaries that handle security futures transactions are subject to SEC registration and oversight.**

Congress also brought the firms that deal with the investing public in security futures within the SEC's regulatory perimeter. A futures commission merchant or introducing broker that effects transactions in security futures must notice register with the SEC as a broker-dealer. 15 U.S.C. § 78o(b)(11); 17 C.F.R. § 240.15b11-1. Such firms are subject to the Exchange Act's antifraud provisions governing broker-dealers. 15 U.S.C. § 78o(c)(1). They must also belong to a national securities association, such as the National Futures Association, which is registered with the SEC for that limited purpose and subject to SEC oversight in that capacity. 15 U.S.C. §§ 78o(b)(11), 78o-3(k). Under that association's sales-practice rules, firms must deliver to each customer the risk disclosure statement for security futures developed jointly by the SEC and the CFTC before a customer may trade. 15 U.S.C. § 78o-3(k)(2). Customer funds are protected under a coordinated SEC-CFTC framework: security futures held in a securities account receive

the protections of the Securities Investor Protection Act and the SEC's customer-protection rule, 15 U.S.C. § 78aaa *et seq.*; 17 C.F.R. § 240.15c3-3, while those held in a futures account receive the Commodity Exchange Act's segregation protections, 7 U.S.C. § 6d(a)(2).

**C. The SEC has continuing authority over security futures and the rules governing their trading.**

Finally, Congress gave the SEC a direct role in determining where and on what terms security futures may be listed and traded. Security futures may trade only on a national securities exchange registered with the SEC, including a designated contract market that has notice registered with the SEC as a national securities exchange, or through a national securities association registered under Exchange Act Section 15A(a). 15 U.S.C. §§ 78f(g)(1), (h)(1), 78o-3(a). The listing market must satisfy statutory requirements that the underlying securities meet eligibility standards; that trading be halted in coordination with the market for the underlying security; that the listing market maintain arrangements to share information and sufficiently coordinate surveillance with the markets on which the underlying securities trade; and that listing standards be no less restrictive than those for comparable exchange-traded options. 15 U.S.C. § 78f(h)(3); 17 C.F.R. § 240.6h-1; *see also* 7 U.S.C. § 2(a)(1)(D)(i). The designated contract market must file with the SEC each rule (and rule change) governing these contracts. 15 U.S.C. §§ 78f(g)(4)(B), 78s(b)(7). The SEC may summarily abrogate any such rule, after consultation with the CFTC, and require that it be refiled and proceed through the SEC's ordinary notice-and-approval process. *See supra* at 5-6.

The SEC also has a role in the financial safeguards that support trading in security futures. The SEC and the CFTC jointly set customer margin requirements for security futures, under authority delegated by the Board of Governors of the Federal Reserve System, and those requirements must be consistent with the margin requirements for comparable exchange-traded

options. 15 U.S.C. § 78g(c)(2)(B)(iii); 17 C.F.R. §§ 242.400–242.406. Clearing agencies for security futures are also subject to SEC registration requirements. 15 U.S.C. § 78q-1(b)(7).

Taken together, these provisions reflect the joint framework Congress designed in the Commodity Futures Modernization Act for security futures, within which the SEC's role is substantial and continuing.

## CONCLUSION

This Court should consider the aspects of the regulatory framework addressed above and deny the Association's motion.

Respectfully submitted,

J. RUSSELL MCGRANAHAN
*General Counsel*

JEFFREY R. JOHNSON
*Solicitor*

DAVID D. LISITZA
*Senior Appellate Counsel*

*/s/ Ezekiel L. Hill*
EZEKIEL L. HILL
*Senior Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202-551-7724 (Hill)
hillez@sec.gov

November 9, 2026