**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAPITAL MARKETS ALLIANCE ASSOCIATION,<br>*Plaintiff*,<br>v.<br>COMMODITY FUTURES TRADING COMMISSION, et al.,<br>*Defendants*. | Civil Action No. 1:26-cv-09608-LGS |

## PLAINTIFF'S OMNIBUS WRITTEN RESPONSE TO AMICUS BRIEFS

This case sharply illustrates the consequences of an agency's failure to comply with the Administrative Procedure Act (APA). Because the Commodity Futures Trading Commission (CFTC) failed to provide any reasoned analysis for its change of position in approving the Stock Perpetuals as "security futures," the public and the Court are left to guess at its rationale. Coinbase, Kalshi, and Bitnomial attempt to supply the missing reasoning in an amicus brief. But their ex-post arguments, which appear to diverge from the CFTC's own ex-post explanations, "express the self-serving views of the regulated entities," have "little supporting value," *Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971, 979 (D.C. Cir. 2023) (cleaned up), and fail on their own terms. The Securities and Exchange Commission (SEC) is unable to fill the void: it does not defend the

CFTC's misclassification. The SEC's brief also recognizes (at 1-2) that the CFTC's "approval[s]" have legal consequence—and neither brief seriously contests that they are final agency action.

As the Alliance's amici make clear, the CFTC's unlawful approvals expose the U.S. financial markets and investors to significant risks. Irreparable harm to Alliance members mounts each day the Stock Perpetuals trade misclassified as security futures and outside Congress's framework for security-based swaps.

**A.** Coinbase, Kalshi, and Bitnomial attempt to explain how single-stock perpetuals meet the "security future" definition. But this Court "must assess the lawfulness of [the CFTC's] action[s] in light of the explanations" the agency offered at the time. *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022); *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943). Here, the CFTC left a "total explanatory void," *Bhd. of Locomotive Eng'rs & Trainmen v. FRA*, 972 F.3d 83, 117 (D.C. Cir. 2020), for approvals that its Chairman heralded as a "milestone," Dkt. 1-1 at 1. The agency's "*ex post* rationales," much less the ex-post explanations of regulated platforms, cannot fill that void. *Kakar*, 29 F.4th at 132.

The platforms' account (at 3, 11) confirms that the CFTC departed from its longstanding position that perpetuals are swaps. As they acknowledge (at 11), "[u]ntil recently, Americans could not trade perpetuals on domestic exchanges." That is because the CFTC treated perpetuals as swaps and single-

stock perpetuals as security-based swaps, and platforms did not seek to comply with the more stringent requirements to trade security-based swaps. Mot.11-12 & n.5.[1] The CFTC abruptly changed course without explaining how its approvals comport with the statute or its prior position. Although the platforms emphasize "months of public comment," including the June 2026 joint request for comment on the classification of equity perpetuals (at 3, 11-12) (citing 91 Fed. Reg. 37,873, 37,876 (June 24, 2026)), they identify no CFTC response to the significant comments received. The platforms' reliance (at 11) on the May 2026 bitcoin-perpetual order fares no better because that order expressly did not extend to single-stock perpetuals.

In this Court, the CFTC and platforms offer differing explanations for how the "security future" definition can be contorted to apply to Stock Perpetuals. The platforms assert (at 17, 22) that single-stock perpetuals are "contract[s] of sale for future delivery," 7 U.S.C. § 1a(44), because there is "delivery" when a holder "closes out" a position or, alternatively, the "funding-rate mechanism constitutes delivery." The CFTC instead argues that the "*absence* of delivery does not exclude perpetuals from the definition of a future." Resp.18-21 (emphasis added). That mismatch underscores a fundamental APA defect: the CFTC said nothing at the time of the approvals, leaving the Court to guess

[1] The SEC likewise treated comparable single-stock products as security-based swaps. Scholars.Br.16; *see* Mot.27-28.

about its rationale, while regulated entities now attempt to fill in the blanks with their own suggested reasoning. *Bhd.*, 972 F.3d at 117.

The platforms' alternative arguments also fail on their own terms. "Closing out" a position is not "delivery." When a party closes out a true futures contract by entering "an equal and opposite transaction," that "*cancel[s]*" the contractual "obligation to accept or make delivery of the underlying" asset or its cash equivalent. 67 Fed. Reg. 43,234, 43,238, 43,240 & nn.39, 58 (June 27, 2002) (emphasis added); *see In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 173-74 (2d Cir. 2013) (parties to a futures contract may "offset or liquidate their positions" "sometime *before delivery is due*" (emphasis added)). But perpetuals have no final delivery or settlement obligation to cancel.[2] Similarly, "funding-rate payments" that recur "at specified intervals" "throughout the contract's life" (at 17-18) while holders continue to maintain their position are not "delivery." *See* CFTC, Futures Glossary, "Delivery," https://tinyurl.com/mwspwymm (defining "delivery" as the "tender and receipt of the actual commodity" or its "cash value" "used to *settle* a futures contract" (emphasis added)). They are instead an "exchange or 'swap' [of] payments." *Sec. Indus. & Fin. Mkts. Ass'n v. CFTC*, 67 F. Supp. 3d 373, 385 (D.D.C. 2014).

[2] Other attempts to circumvent the "security future" definition—such as the platforms' suggestion (at 5) of remote delivery dates attached to price-tracking instruments—raise similar concerns but are not at issue here.

In the end, the platforms only highlight the fundamental distinctions between single-stock perpetuals and security futures. They emphasize (at 9-10) that perpetuals never expire and allow for "continual[]" convergence between the perpetual price and the spot price of the underlying asset. But the future-delivery obligation is a "basic feature[]" of a futures contract. *In re Amaranth*, 730 F.3d at 173. And futures contracts are not designed to track precisely the current price of the underlying asset—"[a] true future … is used to *hedge against* precisely this type of economic exposure." CME.Br.6. That Stock Perpetuals are cleared, exchange-traded, and purchased on margin does not distinguish them from security-based swaps after Dodd-Frank (CME.Br.8-9). While the platforms purport (at 10) to have "solved problems" with "futures" contracts, they are simply offering security-based swaps. 7 U.S.C. § 1a(47)(A)(iii); 15 U.S.C. § 78c(a)(68)(A).

**B.** For its part, the SEC asserts (at 3, 5-6) that it "coordinate[s] and collaborate[s]" with the CFTC, but it does not defend the CFTC's classification. The SEC's refusal to weigh in only reinforces the extent to which the CFTC acted unilaterally and in haste. When confronted with these applications, the CFTC could have requested a jurisdictional determination from the SEC. 15 U.S.C. § 8306. Instead, it single-handedly approved applications for single-stock

perpetuals to trade on CFTC-regulated platforms "for the first time," without written explanation. Dkt. 1-1 at 1.[3]

That the SEC has "tools" to regulate security futures (at 8) is no answer. The point is not that security futures are entirely unregulated but rather that the security-futures scheme is meaningfully distinct from Congress's comprehensive security-based swap protections. In particular, security-based swaps may be offered to retail investors only on national securities exchanges subject to the SEC's full regulatory regime, and only if a Securities Act registration statement is in effect that fully explains the product's risks. Mot.10; Better Markets.Br.3-4, 7-9; ASA.Br.3. The platforms' suggestion (at 28) that regulators would have "less oversight" if relief were granted is meritless. To offer security-based swaps to U.S. retail investors, platforms must comply with Congress's framework. The CFTC's unlawful approvals allow the platforms to bypass those important requirements, irreparably harming Alliance members—whose lost order flow cannot be recovered, Dkt. 18 ¶¶ 17-23; Dkt. 19 ¶¶ 12-21—and putting the markets and investors at risk.

The notion that the SEC "*may*" exercise its authority to "abrogate" the rule changes and require the platforms to resubmit under different SEC procedures (SEC.Br.1-2 (emphasis added)) does not mitigate the present and ongoing

[3] The SEC's non-position also negates the platforms' suggestion (at 3) that the SEC and CFTC are in current agreement that "equity perpetuals" are "security futures."

harm to Alliance members from the CFTC's unlawful approvals. Trading is happening now and growing at a "surprising and troubling" pace. Dkt. 18 ¶ 13. Kalshi's trading volume has reached approximately a billion dollars in a single day,[4] and additional platforms are preparing to launch. Each day that single-stock perpetuals trade misclassified as "security futures" under the CFTC's approvals, Alliance members lose transactions and revenue they cannot recover. Reply 12-13.

The Alliance's amici emphasize the significant systemic risks. The CFTC's approvals allow platforms to offer retail investors leveraged stock substitutes on which modest adverse price movements can exhaust posted margin and trigger forced liquidation, wiping out a customer's investment even if the referenced stock later recovers. Better Markets.Br.10-11; ASA.Br.9-10, 14. Market volatility that originates in perpetuals could create forced selling and funding demands that harm investors even if they never trade perpetuals. ASA.Br.11-12. By inviting a parallel market in U.S. stocks to grow outside the protections established for security-based swaps, the approvals divert trading away from stocks, siphoning liquidity, impairing price discovery, and opening

[4] *See* Sharon LaFraniere et al., *Kalshi Lets You Bet on Stocks. Exchanges Are Livid*, N.Y. Times (Nov. 12, 2026), https://tinyurl.com/36jd5ban; The Block, *Kalshi Perpetuals Daily Volume Per Asset*, https://tinyurl.com/39xa4j42 (sorting for stock perpetuals).

new avenues for cross-market manipulation. Better Markets.Br.15-16; ASA.Br.11, 15. The Court should grant the preliminary injunction and stay.

Dated: November 20, 2026

Respectfully submitted,

_/s/ Megan Barbero_
Megan Barbero (*pro hac vice*)
Courtney L. Dixon (*pro hac vice*)
Elizabeth M. Wilson (*pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Phone: 202-344-4000
mbarbero@venable.com

Matthew T. Murphy
VENABLE LLP
151 West 42nd Street
New York, NY 10036
Phone: 212-307-5500
mtmurphy@Venable.com

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I, Megan Barbero, certify that this document complies with the word limitation in this Court's Order (Dkt. 75) because it contains 1,499 words, exclusive of the caption, signature blocks, and required certificate.

Dated: November 20, 2026

*/s/ Megan Barbero*
Megan Barbero